IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | |
|---|---|
| ALLISON E. B.,       ) | |
|            ) | |
|    **Plaintiff,**     ) | |
|            ) | |
| **v.**           ) | **Case No. 2:21-cv-29** |
|            ) | |
| **KILOLO KIJAKAZI[1],**    ) | |
| **Acting Commissioner of Social Security,** ) | |
|            ) | |
|    **Defendant.**    ) | |

## REPORT AND RECOMMENDATION

Plaintiff Allison E. B. ("Plaintiff") filed this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final decision of Defendant Kilolo Kijakazi, the Acting Commissioner of the Social Security Administration ("the Commissioner"), denying Plaintiff's claim for child insurance benefits ("CIB") and supplemental security income ("SSI") under the Social Security Act. This action was referred to the undersigned United States Magistrate Judge ("the undersigned") pursuant to 28 U.S.C. § 636(b)(1)(B)–(C), Federal Rule of Civil Procedure 72(b), Eastern District of Virginia Local Civil Rule 72, and the April 2, 2002, Standing Order on Assignment of Certain Matters to United States Magistrate Judges. ECF No. 15.

Presently before the Court are the parties' cross motions for summary judgment, ECF Nos. 19, 22. Plaintiff argues that the ALJ erred in finding that Plaintiff is "not disabled" because the

---

[1] On July 9, 2021, Kilolo Kijakazi was appointed as the Acting Commissioner of Social Security, replacing former Commissioner of Social Security Andrew Saul. Accordingly, the Court substitutes Acting Commissioner Kilolo Kijakazi for Andrew Saul in this matter pursuant to Federal Rule of Civil Procedure 25(d).

ALJ failed to properly evaluate the persuasiveness of Dr. Jessica Bernens' opinion. ECF No. 21 at 10–19.

After reviewing the briefs, the undersigned makes this recommendation without a hearing pursuant to Federal Rule of Civil Procedure 78(b) and Local Civil Rule 7(J). For the following reasons, the undersigned **RECOMMENDS** that Plaintiff's Motion for Summary Judgment, ECF No. 19, be **GRANTED**, the Commissioner's Motion for Summary Judgment, ECF No. 22, be **DENIED**, and the final decision of the Commissioner be **VACATED** and **REMANDED**.

## I. PROCEDURAL BACKGROUND

Plaintiff filed applications for CIB and SSI on October 23, 2017, and November 6, 2017, respectively, alleging disability due to autism spectrum disorder, attention-deficit/hyperactivity disorder, generalized anxiety disorder, obsessive-compulsive disorder, and major depressive disorder. R. at 67, 172, 179, 211.[2] Plaintiff's applications were initially denied on July 13, 2018, and again denied upon reconsideration on September 19, 2018. R. at 81, 83, 101, 103. On October 16, 2018, Plaintiff requested a hearing before an administrative law judge. R. at 140.

A hearing was held on November 29, 2019, at which Plaintiff appeared with counsel before Administrative Law Judge Michele Stolls ("the ALJ"), who appeared via videoconference. R. at 35–66. Plaintiff, her mother, and an impartial vocational expert testified at the hearing. R. at 45–66. On January 7, 2020, the ALJ issued a decision finding Plaintiff not disabled. R. at 10–23. Plaintiff filed a request with the Appeals Council to reconsider the ALJ's decision, which was denied on November 12, 2020, making the ALJ's decision the final decision of the Commissioner. R. at 1–3.

---

[2] "R." refers to the certified administrative record that was filed under seal on May 28, 2021. ECF No. 14, pursuant to Local Civil Rules 5(B) and 7(C)(1).

Having exhausted her administrative remedies, on January 14, 2021, Plaintiff filed a Complaint for judicial review of the Commissioner's decision. ECF No. 1. On August 30, 2021, Plaintiff filed a cross-motion for summary judgment and accompanying memorandum in support. ECF Nos. 19, 21.[3]  On September 22, 2021, the Commissioner filed a motion for summary judgment and brief in support. ECF Nos. 22, 23. Plaintiff filed a reply on October 20, 2021. ECF No. 24. Because the motions are fully briefed, the matter is now ripe for recommended disposition.

## II. RELEVANT FACTUAL BACKGROUND

The Record included the following factual background for the ALJ to review:

Plaintiff was fifteen years old at the time of her alleged disability onset date of October 21, 2013. R. at 67. Plaintiff currently lives with her mother and brother. R. at 45. She graduated from high school with honors and completed some college. R. at 52.

### A. Plaintiff's Medical Records Relevant to Alleged Mental Impairments[4]

Plaintiff treated with Dr. Sharmini Santher, M.D. ("Dr. Santher"), from November 2014 to October 2015. *See* R. at 308–311, 426–110. Dr. Santher noted that Plaintiff's mood during her visits was "pretty good" and that Plaintiff was less anxious than her normal baseline. R. at 308–10.  Upon physical examination, Dr. Santher noted that Plaintiff was well-groomed with good hygiene, calm and cooperative, less anxious and frustrated, and her thoughts were goal-directed and organized. R. at 308, 310, 428, 432. Dr. Santher reported that overall Plaintiff was "doing better." R. at 309. Plaintiff expressed interest in going off Adderall for the summer, and going off her anxiety medication since her school stress was alleviated when her special education classes

---

[3] Plaintiff filed her motion for summary judgment on August 30, 2021, and attached her memorandum in support as an exhibit to the motion. ECF No. 19. After a "notice of correction," and in accordance with the Court's filing rules, Plaintiff refiled a separate memorandum in support of the motion for summary judgment on September 2, 2021. ECF No. 21.
[4] Because Plaintiff's physical impairments are not at issue, the Court does not address any medical records relating to Plaintiff's physical impairments. *See* R. at 44.

began. R. at 309. Plaintiff stopped treating with Dr. Santher because Dr. Santher moved out of the area, and transferred care to her family doctor because her "symptoms were stable with medication." R. at 215.

Plaintiff then treated with Dr. Jessica Bernens ("Dr. Bernens"). R. at 315–362, 407–19. On her first visit in November 2016, Dr. Berens noted that Plaintiff was on Adderall, Klonopin, and Prozac. R. at 336. Plaintiff was not experiencing depression or anxiety, and her affect and mood were within normal limits. R. at 337. On follow up in June 2017, Plaintiff noted that she would not need a refill of Adderall because she was out of school, but did request a refill of Prozac and Klonopin as she was tolerating those medications well. R. at 330. Dr. Bernens noted that Plaintiff's ADHD, depression, and anxiety were all well controlled. R. at 330. Upon examination, Plaintiff was not anxious or depressed, and her affect and mood were within normal limits. R. at 332.

Throughout the remainder of Plaintiff's treatment with Dr. Bernens between October 2017 and June 2019, Dr. Bernens consistently found that Plaintiff's ADD, depression, and anxiety symptoms were well controlled with her medication. R. at 327, 324, 319, 411, 414, 417. Upon examination, Plaintiff was not anxious or depressed, and her affect and mood were within normal limits. R. at 329, 326, 321, 413, 419. Plaintiff also denied crying spells, loss of motivation, memory loss, confusion, trouble sleeping, suicidal ideation, and panic attacks. R. at 411, 417. Dr. Bernens made no other abnormal or significant findings.

Plaintiff participated in individual therapy with Alicia Woodworth ("Counselor Woodworth") from February 2018 to June 2018. R. at 363-94. Counselor Woodworth consistently noted that Plaintiff's affect was congruent, that Plaintiff appeared kempt, she was oriented and engaged, but her mood was anxious, and her functional status was "with difficulty." R. at 390,

392, 388, 384, 380, 376, 372, 368, 365.  Counselor Woodworth noted that during her sessions, Plaintiff "did well" and that she works hard to understand how to use lessons from therapy in daily lives and coping strategies.  R. at 382.  On other occasions, Dr. Woodworth reported that Plaintiff was anxious, but her memory was intact.  R. at 370, 367.

In 2019, Plaintiff treated with Kirsten High, LPC ("Counselor High"), from the E3 Center, LLC.  R. at 404–06.  Although there are no specific treatment notes from Counselor High in the record, Counselor High drafted a letter providing of "how Plaintiff struggles with logic and decision-making skills."  R. at 404.

The record also contains evidence of Plaintiff's accommodations at school and her efforts to obtain employment.  Before Plaintiff transitioned from high school to Tidewater Community College, an occupational therapist completed a "assistive technology assessment" for Plaintiff "to determine strategies, accommodations[,] and assistive technology that may assist [Plaintiff] in college.  R. at 312.  The occupational therapist suggested that Plaintiff would find it beneficial to, *inter alia*: become familiar with campus and classrooms before classes start; take fewer classes to start; schedule classes at less busy times of the day; utilize a smartpen; and receive copies of PowerPoint presentations used in classes.  R. at 312–313.  Later, in August 2019, Plaintiff began working with a job counselor from Goodwill.  R. at 297.  The job counselor found that Plaintiff "tends to become very anxious in new environments and around people she does not know" and found that Plaintiff would "benefit from a position that will allow her to work independently on a specific task, with minimal contact with customers."  R. at 297–28.

### B.  Relevant Opinion Evidence

In October 2013, Dr. Santher opined that Plaintiff's diagnoses at that time included: Autism Spectrum Disorder, Attention-Deficit Hyperactivity Disorder, Anxiety Disorder, and that Plaintiff

has a history of Major Depressive Disorder. R. at 403. Dr. Santher opined that Plaintiff: seems to be having a great deal of difficulty on a daily basis in a number of areas and she would highly benefit from an up to date full psychoeducational evaluation, in order to provide her with the appropriate accommodations at school and provide insight on how to best help her at home. R. at 403.

In October 2019, Dr. Bernens filled out a check-the-box medical evaluation report opining on Plaintiff's functional capacities. R. at 421. Therein, Dr. Bernens listed Plaintiff's impairments as: "Autism disorder with ADHD and anxiety disorder, with Asperger's" and noted that Plaintiff's prognosis was stable. R. at 421. In evaluating Plaintiffs' mental abilities, Dr. Bernens noted that Plaintiff had a number of moderate, marked, and extreme limitations. R. at 421–22. Of note, Dr. Bernens' found that Plaintiff had "marked" or "extreme" limitations in her abilities to: understand and remember detailed instructions; carry out detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule; maintain regular attendance and be punctual within customary intolerances; sustain an ordinary routine without special supervision; work in coordination with or proximity to others without being distracted by them; complete a normal workday and workweek without interruption; interact appropriately with the general public; accept instructions; respond appropriately to criticism from supervisors; be aware of normal hazards and take appropriate precautions; respond appropriately to customary stresses in a work setting; to travel in unfamiliar places or use public transportation; and to set realistic goals or make plans independently of others. R. at 421–22. Dr. Bernens commented that Plaintiff: "is a delightful young lady who, unfortunately, has combined autism/Asperger's disorder, ADHD and anxiety disorder, that make many [activities of daily living] extremely difficult. I support her application for disability." R. at 422.

6

Counselor High drafted a letter explaining how Plaintiff "struggles with logic and decision-making skills," and included several examples demonstrating Plaintiff's difficulties. R. at 404. For example, Counselor High explained that Plaintiff has difficulty with feeling like she has done something wrong and feels guilty—which causes her difficulty answering questions, following safety rules, and frustration with her friends. R. at 404–05. Counselor High explained that Plaintiff has trouble with logic, and does not put together ideas such as, "if her mother asked her if the dog went out and she says she doesn't know; she has been told if she is the only one home and she didn't let him out then he didn't go out." R. at 404. Counselor High also explained that Plaintiff has trouble with identifying issues ahead of time, having to be reminded to complete hygiene needs and chores, and that she lacks motivation and energy at times.

On the initial level of review, State Agency Psychologist Eric Oritt found that Plaintiff had: mild limitations in her ability to understand, remember, or apply information; no limitations in her ability to interact with others; mild limitations in her ability to concentrate, persist, or maintain pace; and no limitations in her ability to adapt or manage herself. R. at 70, 73. On reconsideration, state agency psychologist Howard Leizer agreed with the initial limitations. R. at 89, 92.

### C. Testimony at ALJ Hearing

At the ALJ hearing, both Plaintiff and her mother testified, with Plaintiff's mother responding when Plaintiff was unable to answer the ALJ's questions. *See* R. at 45–61.

Plaintiff graduated from high school with honors, and took some special education classes. R. at 52. Plaintiff went to college for two years, and took only a half-load of classes at a time. R. at 52. During high school and college, Plaintiff received accommodations such as extra time on assignments and tests, a quiet space to work, and additional access to recordings of lectures and notes. R. at 52, 55.

At home, Plaintiff helps take care of pets and does light household chores.  R. at 45.  She can make simple meals and do simple chores, though sometimes she needs reminding from her mother to complete the chores in a certain timeframe.  R. at 53, 58.  Plaintiff's mother explained that Plaintiff took Adderall for school, and although she stopped when she was no longer in school, Plaintiff she started taking it again to help with her job interviews and staying on task with chores at the house.  R. at 51.

Plaintiff has friends from high school and together they watch tv, play video games, and shop on occasion.  R. at 49.  Although Plaintiff generally gets along well with her friends, they sometimes have fights.  R. at 49.  Her hobbies include crafts, cartoons, and video games, and in her spare time she watches television and goes on the internet. R. at 53, 61.  Plaintiff can play video games for an hour or two before losing concentration. R. at 60.

Plaintiff testified that she does not think she could complete a full-time job because she has trouble multitasking, taking many directions and a time, and trouble understanding and communicating with others.  R. at 53.  Plaintiff testified that she has trouble with interviews because she gets nervous. R. at 48.  Plaintiff further explained that she has trouble communicating and understanding social cues, and communicating her feelings to others. R. at 48, 53.  Plaintiff also stated that she gets sidetracked very easily, and takes breaks from her chores and ends up doing other things.  R. at 59–60.  Plaintiff's mother agreed with Plaintiff that she did not think Plaintiff could complete a full-time job because she has difficulty following multiple steps, thinks very literally, gets upset and anxious when she thinks she has made mistakes, and has difficulty communicating with people and answering questions.  R. at 54.

8

Plaintiff's mother testified that Plaintiff has tried to learn to drive in parking lots, but Plaintiff gets anxious when she sees other cars and freezes up. R. at 46–47. Plaintiff has tried to obtain jobs and worked with a job coach from Goodwill, but has been unsuccessful. R. at 47. Plaintiff's mother testified that Plaintiff gets upset easily when her friends do not immediately respond to her messages, and Plaintiff easily gets the impression that her friends are mad at her. R. at 54.

## III. <u>THE ALJ'S DECISION</u>

Under the Social Security Act, an individual may qualify for CIB if he or she is over eighteen years old and has a disability that began before age twenty-two. § 404.350(a)(5). "The claimant must also file an application for [CIB], and be under a "disability" as defined in the Act." *Cobb v. Colvin*, No. 2:15cv161, 2016 WL 8199316, at *3 (E.D. Va. Mar. 3, 2016). The ALJ uses the same five-step sequential evaluation process that applies to adult disability determinations to determine eligibility for CIB. *Id.*

To determine if the claimant is eligible for benefits, the ALJ conducts a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520, 416.920; *Mascio v. Colvin*, 780 F.3d 632, 634–35 (4th Cir. 2015) (summarizing the five-step sequential evaluation). At step one, the ALJ considers whether the claimant has worked since the alleged onset date, and if so, whether that work constitutes substantial gainful activity. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). At step two, the ALJ considers whether the claimant has a severe physical or mental impairment that meets the duration requirement. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). At step three, the ALJ determines whether the claimant has an impairment that meets or equals the severity of a listed impairment set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the claimant does not have an impairment that meets or equals the severity of a listed impairment,

the ALJ will determine the claimant's residual functional capacity, that is, the most the claimant can do despite her impairments. §§ 404.1545(a), 416.945(a). At step four, the ALJ considers whether the claimant can still perform past relevant work given her residual functional capacity. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). Finally, at step five, the ALJ considers whether the claimant can perform other work. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

The ALJ will determine the claimant is not disabled if: they have engaged in substantial gainful activity at step one; they do not have any severe impairments at step two; or if the claimant can perform past relevant work at step four. *See Jackson v. Colvin*, No. 2:13cv357, 2014 WL 2859149, at *10 (E.D. Va. June 23, 2014). The ALJ will determine the claimant is disabled if the claimant's impairment meets the severity of a listed impairment at step three, or if the claimant cannot perform other work at step five. *Id.*; *see also Mascio*, 780 F.3d at 634–35 (noting the ALJ will only determine the claimant's residual functional capacity if the first three steps do not determine disability).

Under this sequential analysis, the ALJ made the following findings of fact and conclusions of law:

Before proceeding to the sequential evaluation process, the ALJ found that Plaintiff had not yet attained age twenty-two by the time of her alleged onset date. R. at 13. At step one of the sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged disability onset date of October 21, 2013. R. at 13. At step two, the ALJ found that Plaintiff had the following severe impairments: attention deficit disorder (ADD), attention-deficit/hyperactivity disorder (ADHD), persistent depressive disorder, anxiety disorder, autism spectrum disorder/Asperger's syndrome, and obsessive-compulsive disorder (OCD). R. at 13. At step three, the ALJ considered Plaintiff's severe impairments and found that Plaintiff did

10

not have an impairment or combination of impairments that met or medically equaled the severity

of one of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. R. at 13–16.

After step three, the ALJ determined that Plaintiff had the residual functional capacity

("RFC") to perform a full range of work at all exertional levels, but Plaintiff would be limited to

occupations

> which do not require exposure to hazards such as dangerous machinery and
> unprotected heights. She is limited to occupations requiring no more than simple,
> routine tasks, not performed in a fast-paced production environment, involving only
> simple, work-related decisions, and in general, relatively few work place changes.
> She is limited to occupations[] which require no more than occasional interaction
> with supervisors, and coworkers and no interaction with members of the general
> public. She is limited to occupations requiring low stress, defined as occasional
> decision[ ]making required. She is limited to no tandem tasks with coworkers.

R. at 16. In making this determination, the ALJ considered "all symptoms and the extent to which

these symptoms can reasonably be accepted as consistent with the objective medical evidence and

other evidence, based on the requirements of 20 C.F.R. § 404.1529 and SSR 16-3p." R. at 16.

At step four, the ALJ determined that Plaintiff had no past relevant work. R. at 21. At step

five, the ALJ determined that Plaintiff could perform other jobs that exist in significant numbers

in the national economy, including the representative occupations of cleaner, folder, and scanner.

R. at 21–22. Thus, the ALJ determined that Plaintiff was not disabled from the alleged onset date,

October 21, 2013, through the date of her decision, January 7, 2020. R. at 22–23.

## IV. STANDARD OF REVIEW

Under the Social Security Act, the Court's review of the Commissioner's final decision is

limited to determining whether the decision was supported by substantial evidence in the record

and whether the correct legal standard was applied in evaluating the evidence. *See* 42 U.S.C.

§ 405(g); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "evidence

as a reasonable mind might accept as adequate to support a conclusion." *Craig v. Chater*, 76 F.3d

585, 589 (4th Cir. 1996) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Britt v. Saul*, No. 19-2177, 2021 WL 2181704, at *2 (4th Cir. May 28, 2021) (quoting *Craig*, 76 F.3d at 589). The Court looks for an "accurate and logical bridge" between the evidence and the ALJ's conclusions. *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018); *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016); *Mascio v. Colvin*, 780 F.3d 632, 637 (4th Cir. 2015).

In determining whether the Commissioner's decision is supported by substantial evidence, the Court does not "re-weigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the [Commissioner]." *Craig*, 76 F.3d at 589. If "conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for the decision falls on the [Commissioner] (or the [Commissioner's] delegate, the ALJ)." *Id.* (quoting *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987)). Accordingly, if the Commissioner's denial of benefits is supported by substantial evidence and applies the correct legal standard, the Court must affirm the Commissioner's final decision. *Hays*, 907 F.2d at 1456.

## V. ANALYSIS

Plaintiff's appeal to this Court raises a single challenge to the ALJ's decision. Plaintiff argues that the ALJ erred by failing to properly evaluate Dr. Bernens' opinion, rendering Plaintiff's RFC without substantial evidence. ECF No. 21 at 1, 10–19. Plaintiff contends that the ALJ erred by failing to address the consistency factor when evaluating Dr. Bernens' opinion. Plaintiff contends that Dr. Bernens' opinion is consistent with other evidence in the record, including Counselor High's letter, and Plaintiff's mother's testimony, ECF No. 21 at 12–13, and that the ALJ's rationales for "rejecting" Dr. Bernens' opinion are flawed or not legitimate. *Id.* at 13–19. In response, the Commissioner argues that the ALJ applied the correct legal standard in evaluating

Dr. Bernens' opinion, and that substantial evidence support's the ALJ's rationale for finding Dr. Bernens' opinion unpersuasive. ECF No. 23 at 15–29.

Under the Social Security Administration regulations[5], the ALJ must consider each medical opinion in the record and articulate how persuasive they find the medical opinion based on the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors that tend to support or contradict the opinion. §§ 404.1520c(b), (c)(1)–(5), 416.920c(b), (c)(1)–(5).   Supportability and consistency are "the most important factors" in determining the persuasiveness of a medical opinion, and accordingly, the ALJ must explain how he or she considered those factors in the written decision.   §§ 404.1520c(b)(2), 416.920c(b)(2).   With respect to supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are," the "more persuasive the medical opinion[]" will be.   §§ 404.1520c(c)(1), 416.920c(c)(1).   As for consistency, "[t]he more consistent a medical opinion[]" is with "evidence from other medical sources and nonmedical sources," the "more persuasive the medical opinion[]" will be.   §§ 404.1520c(c)(2), 416.920c(c)(2).   The ALJ may explain how he or she considered the other factors, including the medical source's relationship with the claimant, but are only required to do so when contradictory medical opinions regarding the same issue are equally supported by and consistent with the record. §§ 404.1520c(b)(2)–(3), 416.920c(b)(2)–(3).   If medical opinions regarding the same issue are equally supported by and consistent with the record, the ALJ must articulate the other factors and consider their impact on the persuasiveness of the medical opinions.     §§ 404.1520c(b)(3), 416.920c(b)(3).

---

[5] Because this matter involves a claim filed after March 27, 2017, the revised regulations regarding the evaluation of medical opinions set forth in Section 404.1520c apply in this case. Under the new regulations, ALJs no longer "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion." 20 C.F.R. § 404.1520c(a).

Generally, the ALJ "'need not repeat herself regurgitating [the evidence of record] each time that she considers an opinion,' so long as the ALJ points to specific parts of the record that prove consistent or inconsistent with the relevant opinion such that the Court can determine whether substantial evidence supports the weight assigned." *Vanessa M. v. Saul*, No. 3:19CV012 (DJN), 2019 WL 6749416, at *13 (E.D. Va. Dec. 11, 2019) (quoting *Ross v. Berryhill*, 2019 WL 289101, at *6 (E.D. Va. Jan. 3, 2019) (citing *Reid v. Comm'r of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014)), *report and recommendation adopted*, 2019 WL 281191 (E.D. Va. Jan. 22, 2019)). However, the ALJ is still required to at least articulate whether or not the opinion is consistent with the other evidence in the record. *See* §§ 404.1520c(b)(2), 416.920c(b)(2) ("we will explain how we considered the supportability and consistency factors for a medical source's medical opinions . . . in your determination or decision). "The Court may not 'fill in the blanks for the ALJ[,]' nor may the Court '[h]armoniz[e] conflicting evidence,' or 'bolster[ ] inconclusive findings' as these activities fall outside the scope of review." *Tanzi F. v. Saul*, No. 3:19cv167, 2021 WL 3205050, at *8 (E.D. Va. July 8, 2021) (citing *Patterson v. Comm'r of Soc. Sec. Admin.*, 846 F.3d 656, 662–63 (4th Cir. 2017), *report and recommendation adopted*, No. 3:19cv167, 2021 WL 3192162 (E.D. Va. July 28, 2021).

In evaluating Dr. Bernens' opinion, the ALJ found that Dr. Bernens' opinions about marked and extreme limitations were unpersuasive. R. at 20. The ALJ explained that:

> [Dr. Bernens'] own treatment notes are devoid of any exacerbation of severity of such symptoms and consistently show the [Plaintiff] as in no distress, alert and oriented, with mood and affect within normal limits and denying any symptoms ([citing R. at 315–62, 407–19]). Moreover, the doctor's own examination findings document no active issues with anxiety, depression, of ADHD, and show compliance with medications, stable on medication, without any exacerbation of symptoms that warrant a higher level of treatment, inpatient psychiatric hospitalization, or recommendation for a structured living environment. Furthermore, the doctor's records that are simply medication management, lack any

supportability of the significant difficulties with activities of daily living that she references ([citing R. at 315–62, 407–19]).

R. at 20.

In addressing supportability, the ALJ sufficiently explained that Dr. Bernens appears to have only treated Plaintiff for medication management, and Dr. Bernens' opinions are not supported by her own treatment notes. *See* R. at 20. Although Dr. Bernens' opined that Plaintiff had several marked or extreme limitations in each area of mental functioning, Dr. Bernens' treatment notes consistently and exclusively show that Plaintiff's symptoms of her impairments were well-controlled with medication. R. at 330, 327, 324, 319, 411, 414, 417. Dr. Bernens also noted that Plaintiff was not anxious or depressed, and her affect and mood were within normal limits, R. at 329, 326, 321, 413, 419, and Plaintiff denied crying spells, loss of motivation, memory loss, confusion, trouble sleeping/increased sleeping, or any other concerns. R. at 411, 417. Thus, the ALJ sufficiently explained that Dr. Bernens' opinion was not well-supported, and that finding is corroborated by Dr. Bernens' treatment notes which demonstrate no abnormal findings or any findings that would warrant marked or extreme limitations.

However, with respect to consistency, as Plaintiff points out, the ALJ failed to articulate whether Dr. Bernens' opinion was consistent with other medical and nonmedical sources. *See* ECF No. 21 at 12; R. at 20. Of note, the ALJ only cited Dr. Bernens' treatment notes and opinion in evaluating Dr. Bernens' opinion, and did not otherwise address any other evidence in the record. *See* R. at 20. The ALJ's evaluation of Dr. Bernens' opinion is devoid of any explanation whether or not the ALJ considered the consistency factor in evaluating the persuasiveness of Dr. Bernens' opinion, and if so, whether or not the ALJ found that Dr. Bernens' opinion was consistent with or inconsistent with the record. *See* R. at 20. The ALJ's failure to articulate the consistency factor in her explanation of Dr. Bernens' opinion is error. *See* §§ 404.1520c(b)(2), 416.920c(b)(2). The

Court cannot "fill in the blanks for the ALJ" by finding substantial evidence supports the ALJ's evaluation of Dr. Bernens' opinion when the ALJ did not even address the consistency factor, nor may the Court "bolster[ ] inconclusive findings" when the ALJ did not discuss the extent to which Dr. Bernens' opinion was either consistent or inconsistent with the evidence in the record. *See Patterson*, 846 F.3d at 662. Absent any explanation by the ALJ whether or not Dr. Bernens' opinion was consistent with or inconsistent with the record, this Court cannot meaningfully review how the ALJ evaluated the persuasiveness of Dr. Bernens' opinion and whether substantial evidence supports the ALJ's determination. Accordingly, remand is warranted for the ALJ to consider the consistency of Dr. Bernens' opinion with the other evidence in the record, and to assess whether that opinion affects Plaintiff's RFC or ultimate disability determination.

## VI. **RECOMMENDATION**

Because the ALJ erred by failing to articulate the consistency factor in evaluating Dr. Bernens' opinion, the undersigned **RECOMMENDS** that Plaintiff's Motion for Summary Judgment, ECF No. 19, be **GRANTED**, the Commissioner's Motion for Summary Judgment, ECF No. 22, be **DENIED**, and the final decision of the Commissioner be **VACATED** and **REMANDED**.

## VII. **REVIEW PROCEDURE**

By receiving a copy of this Report and Recommendation, the parties are notified that:

1. Any party may serve on the other party and file with the Clerk of the Court specific written objections to the above findings and recommendations within fourteen days from the date this Report and Recommendation is forwarded to the objecting party, *see* 28 U.S.C. § 636(b)(1)(C) and Federal Rule of Civil Procedure 72(b), computed pursuant to Federal Rule of Civil Procedure

Rule 6(a). A party may respond to another party's specific written objections within fourteen days after being served with a copy thereof. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

2. A United States District Judge shall make a *de novo* determination of those portions of this Report and Recommendation or specified findings or recommendations to which objection is made. The parties are further notified that failure to file timely specific written objections to the above findings and recommendations will result in a waiver of the right to appeal from a judgment of this Court based on such findings and recommendations. *Thomas v. Arn*, 474 U.S. 140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984), *cert. denied*, 474 U.S. 1019 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984), *cert. denied*, 467 U.S. 1208 (1984).

The Clerk is **DIRECTED** to forward a copy of this Report and Recommendation to the counsel of record for Plaintiff and the Commissioner.

Lawrence R. Leonard
United States Magistrate Judge

Norfolk, Virginia
January 31, 2022